ELISHA B. STEERE

*v.*

WILLIAM J. BROWNELL.

*Filed at Springfield March 30, 1885.*

1. ARBITRATION—*extent of the award, as embracing all matters submitted.* An award of arbitrators, to be valid and binding, must embrace and decide all matters submitted to them and not withdrawn by the parties from their consideration.

2. SAME—*what to be regarded as a withdrawal of a part of matters submitted.* A promise by one of the contesting parties to a submission to arbitration, to pay certain of the claims embraced in the submission, the promise being upon such conditions, however, as to leave unsettled the very question of liability in respect to such claims which was covered by the submission, will not be regarded as a withdrawal of them from the consideration of the arbitrators.

3. SAME—*of award prepared by one of the attorneys in the proceeding.* The fact that an award of arbitrators is prepared by one of the attorneys of the successful party, affords no ground for setting the award aside, where it fully expresses the findings and conclusions of the arbitrators.

4. SAME—*effect of signing the award at different times and places.* The fact that an award is not signed by all the arbitrators at the same time and place, affords no ground for setting the same aside. It is sufficient that it is signed by them after the close of their investigation and deliberations, and fully expresses the conclusions reached by them.

5. SAME—*setting aside of award on technical grounds.* An award should not be set aside on merely technical grounds that in nowise affect the merits of the controversy, especially where it is apparent that the utmost good faith has been observed.

APPEAL from the Appellate Court for the Third District; —heard in that court on appeal from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

On the 1st of January, 1877, Elisha B. Steere, the appellant, and William J. Brownell, the appellee, entered into a co-partnership in the boot and shoe business, at Bloomington, this State, under the firm name of W. J. Brownell & Co. The partnership continued until on or about the 31st of January, 1883, when certain differences arose between them in respect

to business transactions, some of which related to the partnership, and others did not. For the purpose of settling these differences and closing up their partnership affairs they entered into the following agreement:

"Whereas, it is the desire of Elisha B. Steere and William J. Brownell to submit certain matters, hereinafter mentioned, to arbitration, and to close out the business of the firm of W. J. Brownell & Co.: Now, therefore, it is hereby agreed that the firm of W. J. Brownell & Co., composed of William J. Brownell and Elisha B. Steere, shall be and is hereby dissolved, except for the adjustment of the business of the said firm, which shall be done in the following manner: The store shall be closed immediately, and Elisha B. Steere, William J. Brownell, John P. McLean and M. J. Sliter shall take an invoice of the stock of goods now on hand, and when completed, the invoice, with the keys of the store, shall be delivered to Peter Whitmer, Lyman Ferre and Duncan Funk, who shall immediately offer such stock for sale to the said Steere and Brownell, and shall sell it to the one who shall offer the largest per cent on the said invoice price; and upon the payment to such arbitrators of one-half of such bid, said arbitrators shall deliver the stock to such purchaser, and the lease of the building now occupied shall be assigned to the purchaser of the stock, and, retaining such money in their hands, the arbitrators shall immediately proceed to state the account between said Brownell and Steere touching the matters between them as such partners, and for such purpose shall have custody and control of all books and papers pertaining to such business.

"And whereas, the said Brownell claims that the salary of John P. McLean should be paid by said Steere: therefore, the said arbitrators shall determine and decide whether such salary shall be paid by Elisha B. Steere or W. J. Brownell & Co. Touching all the matters pertaining to such partnership, the said William J. Brownell and Elisha B. Steere hereby

appoint as arbitrators Peter Whitmer, Lyman Ferre and Duncan Funk, and agree that they make a report, in writing, of their finding and decision touching such partnership, which finding and decision the said Steere and Brownell hereby agree to accept and perform, and that upon such finding and decision a decree and supplemental decrees may be entered in the circuit court of McLean county.

"And whereas, there are certain other matters outside of said partnership, among which are the following: First, Brownell claims that Steere is indebted to him on account of one promissory note, signed by Ira Lackey and John M. Major, and assigned by said Steere; second, Brownell claims that said Steere is indebted to him on account and for services rendered as clerk in the M. F. Case receivership business; third, said Steere claims that Brownell is indebted to him for board; and fourth, Steere claims said Brownell is indebted to him on account of certain deals on the board of trade in Chicago,—now, therefore, it is hereby agreed that each and all of the above mentioned claims, numbered 1, 2, 3 and 4, shall be and are hereby submitted to such arbitrators, which they shall consider, and find the balance that may be due from the one to the other, which balance they shall report, in writing, and a judgment of the said circuit court may be entered thereon according to such finding.

"It is further agreed that the money in the hands of said arbitrators at the time of making their report upon an adjustment of accounts, both partnership and individual, between said Steere and Brownell, shall be applied, or as much as is necessary, in payment of such indebtedness, on the account stated. In the adjustment of all the above matters the said arbitrators shall be governed by the rules of law, as near as they can, but they shall not apply the Statute of Limitations.

"Witness our hands and seals, this 3d day of January, A. D. 1882.

W. J. BROWNELL, [Seal.]

E. B. STEERE. [Seal.]"

27—113 ILL.

Pursuant to the above agreement and submission, the partnership goods were invoiced and sold to Brownell, who took possession of the same, together with the books, papers, etc., belonging to the firm. The arbitrators proceeded to hear and adjust the differences, and to state an account between the parties, which was not concluded until a considerable time afterwards. The parties and their counsel appeared before the arbitrators, from time to time, until they finished the business submitted to them, as they understood it, when, on the 6th day of April, 1882, they made and delivered to the parties, respectively, the following award:

"Whereas, William J. Brownell and Elisha B. Steere did, by written submission, dated January 31, 1882, submit to the undersigned certain matters of difference between them, for our decision, as arbitrators; therefore, pursuant to said submission, we find and decide as follows, to-wit:

We find that Brownell owes Steere—

| | |
|---|---|
| On account of sale of stock, | $6180.83 |
| On account of board bill, | 912.50 |
| On account of board of trade deal, | 350.14 |
| Total, | $7443.47 |

We find that Steere owes Brownell—

| | |
|---|---|
| On account of Major and Lackey note, dated December 31, 1874, | $1438.00 |
| On account of Steere note, dated September 18, 1875, | 325.73 |
| On account of a judgment dated June 30, 1877, against Major and Steere, | 735.20 |
| On firm account, | 1286.66 |
| Total, | $3785.59 |

—Leaving a balance due Steere of $3657.88, which we hold subject to his order. We further find, that pursuant to said submission we took possession of the stock of goods therein

mentioned, and after the same had been invoiced, as therein
provided, we put the same up for sale at auction, between
said Steere and Brownell, and sold the same to Brownell for
one hundred and four cents on the dollar, the whole sale
amounting to $12,361.66. We find that said Brownell de-
livered money and collateral security to us sufficient to secure
one-half of the purchase, as therein provided in the submis-
sion. We find that John P. McLean's account, amounting
to $4723.54, should be charged to Steere, the said account
having been made on account of salary as clerk. We further
find that if any additional claim is made by said McLean for
services, the said Steere shall pay for the same. In stating
the foregoing account, we have charged McLean's account to
Steere, and after so charging it, we find that Steere owes the
firm of W. J. Brownell & Co. $2573.33 more than Brownell
does. We further find that said parties, by agreement, with-
drew from our consideration the account of Brownell against
Steere, in the M. F. Case business.

"Witness our hands and seals, this 6th day of April, 1882.

> PETER WHITMER, [L. S.]
> LYMAN FERRE,   [L. S.]
> D. M. FUNK.    [L. S.] "

The appellant not being satisfied with the award, filed a
bill in the McLean circuit court to impeach it. Among other
things, it is charged in the bill that the award "is not as
broad as the submission,—*i. e.*, that it does not include or
dispose of a large number of disputed accounts that appear
upon the books of the firm as firm accounts, which appellant
claims of right and justice should be charged to appellee,
and that each and all of them were specially submitted to the
arbitrators, and their attention called to each of them, but
they neglected, failed and refused to pass on them, or either
of them, and that among them were the following: E. S.
Miller, $50; M. Swan, $5.50: H. B. Cranmer, $10; Charles

Boyce, \$10; O. Calkins, \$5; Thomas Hatfield, \$114.60; A. H. Moore, \$288.90; Charles Dalton, \$274.60; Thomas Coultis, \$85; D. Bailey, \$5; Charles Eager, \$25; J. E. Pollock, \$71.30." The award is also assailed on other grounds not necessary to be mentioned. There was a hearing upon the merits, resulting in a decree dismissing the bill, which was affirmed by the Appellate Court for the Third District, from whence the complainant brings the case to this court for review.

Messrs. FIFER & PHILLIPS, and Mr. HAMILTON SPENCER, for the appellant, contended—

*First*—That the award was prepared and written out by John E. Pollock, appellee's attorney.

*Second*—That it was not signed by the arbitrators at the same time or at the same place.

*Third*—That the award was signed in the presence of John E. Pollock, appellee's attorney, and in the absence of and without notice to appellant or his attorney. Those facts make the award void. *Underwood* v. *Railway Co*. 11 C. B. 442; *Lord* v. *Lord*, 5 E. & B. (85 E. C.) 404; *Wright* v. *Graham*, 3 Ex. 132; *Wade* v. *Dowling*, 4 E. & B. (82 E. C.) 46; *Moore* v. *Ewing*, Coxe, 144; *Daniels* v. *Ripley*, 10 Mich. 237; *French* v. *Butler*, 39 id. 79; *Smith* v. *Smith*, 28 Ill. 56.

*Fourth*—An award must be as broad as the submission, and the omission of any matter submitted avoids the award. *Smith* v. *Smith*, 28 Ill. 56; *Alfred* v. *Railroad Co*. 92 id. 611; *Shirfy* v. *Graham*, 72 id. 159; 2 Parsons on Contracts, 847, 850; *Thompson* v. *Blanchard*, 2 Iowa, 44; *Sharp* v. *Woodbury*, 18 id. 195; Moss on Arbitration, 137, 346.

Mr. JOHN E. POLLOCK, for the appellee:

Every intendment is made in favor of an award. *Root* v. *Renwick*, 15 Ill. 461; *Haywood* v. *Harmon*, 17 id. 477; *Durst* v. *Collier*, 86 id. 96; *Henderson* v. *Reinbock*, 33 id. 299.

In the absence of the proof of fraud, it will be presumed that the arbitrators considered all the evidence, and allowed all items proved. *Hadaway* v. *Kelly,* 78 Ill. 286; *Hubbard* v. *Firman,* 29 id. 90.

It is not necessary that the award should be signed at the same time and place. *Blodgett* v. *Prince,* 109 Mass. 46; *Maynard* v. *Frederick,* 7 Cush. 252; *Sperry* v. *Rucker,* 4 Allen, 18.

An award prepared by an attorney of one of the parties, and signed in his presence, is not invalid.

It is not necessary for the parties to be present when the award is signed. *Roloson* v. *Carson,* 8 Md. 22; *Saunders* v. *Heaton,* 12 Ind. 20.

When separate and distinct matters are submitted, an award as to such matters will be upheld, although void as to certain other matters. *Muldrow* v. *Norris,* 2 Cal. 74; *Reynolds* v. *Reynolds,* 15 Ala. 398; *Parmelee* v. *Allen,* 32 Conn. 115; *Walker* v. *Walker,* 28 Ga. 140; *Carson* v. *Earlywine,* 14 Ind. 256; *Banks* v. *Adams,* 23 Me. 259; *Orcutt* v. *Butler,* 42 id. 83; *Cromwell* v. *Owens,* 6 H. & J. (Md.) 10; *Gibson* v. *Broodfoot,* 3 Desau. (S. C.) 11; *Caton* v. *McTavish,* 10 G. & J. (Md.) 192; *Gibson* v. *Powell,* 13 Miss. 712; *Barrows* v. *Capon,* 11 Cush. 37; *Chase* v. *Strain,* 15 N. H. 535; *Tracy* v. *Herrick,* 25 id. 381.

When a portion of the matters submitted is withdrawn from the consideration of the arbitrators, an award as to the remaining portion is valid. *Ballance* v. *Underhill,* 3 Scam. 453; Watson on Arbitration, 115-117.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

An examination of the oral testimony in connection with the submission shows that the differences between the parties which led to a dissolution of the partnership and the submission of their disputes to arbitration, related mainly to certain partnership claims which had been either paid by or

were due to or from the firm, or had been paid by one or the other of the parties and claimed to be due from the firm. For illustration, it was claimed by Brownell, on the one hand, that a large amount of money and goods which had been drawn out of the firm by John P. McLean, for his services as clerk, should, under the circumstances, be charged up to Steere, individually. This the latter denied. On the other hand, there were certain unpaid accounts on the partnership books, due the firm from various persons, which were evidently regarded by both parties as doubtful or desperate claims, and which Steere insisted, under the circumstances, ought to be charged up to Brownell's account. This claim of Steere was, in effect, partly conceded before the arbitrators, but not fully, and hence there was an unsettled difference between the parties in respect to them, which was clearly covered by the submission. The claims here referred to are those against Miller, Swan, and others, specifically set forth in the bill, as well as in the statement which precedes this opinion. An examination of the award shows that the arbitrators made no disposition whatever of these claims, thus leaving, as it would seem, one of the chief objects of the arbitration unattained,—namely, the settlement of all differences relating to their partnership matters.

That these claims were presented by Steere to the arbitrators for adjustment, is clearly and satisfactorily shown by the evidence. Indeed, it is not seriously controverted, but the contention rather is, that after they had been presented, and some discussion had occurred between the parties in respect to them, they were voluntarily withdrawn, upon the understanding that the parties themselves would settle them. We have no hesitancy in saying this position is not sustained by the proofs. On the contrary, we are of opinion that the decided weight of evidence shows that nothing of this kind occurred. The whole trouble in the case has evidently grown out of a misapprehension on the part of the arbitrators in

respect to the scope and extent of the submission, and the inferences they were authorized to draw from the statements made by Steere and Brownell before them, concerning these claims. This is clearly shown by the testimony of Peter Whitmer, one of the arbitrators. In speaking of these claims he says: "We (meaning the arbitrators) understood the articles by which we were governed did not include the settlement of these accounts, * * * and Brownell agreed, in the presence of Steere, to be personally responsible for a number of these accounts, if they were not collected." Taking the view the arbitrators did in respect to their right, under the submission, to consider these accounts, they would hardly have made any award concerning them, in any event; but assuming they would but for what was said about them by Steere and Brownell, it is very clear the arbitrators drew an unwarranted inference from the language used, for, according to the decided weight of testimony, there was nothing said by either of them that justified the conclusion that the accounts were withdrawn from the consideration of the arbitrators. The facts, as we understand them from the proofs, are simply these: Steere brought the claims before the arbitrators, and insisted they should be charged up to Brownell. The list was gone over, and discussed between the parties, in the presence of the arbitrators. As to some of them, Brownell said he would pay them if not collected from the parties owing them, as soon as he could collect of the firm accounts a sufficient amount to enable him to do so, out of his share of the proceeds, after having first paid the debts due from the firm. As to others, he said he would settle them in the same way if the firm was not liable for them. By this we understand him to have meant, that, assuming the claims proved uncollectible, he would stand the whole loss if it was not properly chargeable to the firm. This conditional promise was, of course, leaving the very question in dispute (namely, Brownell's exclusive liability,) still open for further contro-

versy—the very thing sought to be avoided by the arbitration. As to another of the claims, Brownell proposed to settle it provided he could do it by setting it off against a claim the one owing it had against the firm. Now, there is clearly nothing in all this that justifies the conclusion that the accounts in question were withdrawn from the consideration of the arbitrators. To make the case much stronger upon appellee's theory of it, let us suppose that when Steere presented these accounts, and assigned the reasons why they should be charged up to Brownell, individually, the latter had said, in response, "I concede the justness of what you say in respect to these claims, and promise you I will become personally responsible for them, and settle them just as soon as collections will enable me to do so," and Steere had rejoined, "That is satisfactory,"—would this have authorized the arbitrators to take no account of the claims in stating the account between the parties? Surely not. The only effect of the statement would have been to relieve Steere from the burden of proving such facts and circumstances as would have shown that the accounts in question should, in justice, be charged up to Brownell, individually. Upon such a statement of the parties it would clearly have been the duty of the arbitrators, in stating the account, to have charged these claims up to Brownell, without further proof. If this be true, of which there are no just grounds to doubt, it will not be pretended the action of the arbitrators can be sustained. These claims having been specifically submitted, they should have been passed upon by the arbitrators. If the evidence was sufficient to charge Brownell, they should have been allowed, otherwise they should have been rejected. This was not done, as appears not only from the evidence, but from the face of the award itself. This was a serious error, directly affecting the validity of the award.

As to the claim that the arbitrators willfully disregarded the law in the discharge of their duties, we see nothing in the

record to warrant it. Nor do we see anything substantial in the objection that the award was prepared by one of the attorneys, as there is nothing tending to show it did not fully express the findings and conclusions of the arbitrators. An award should not be set aside on merely technical grounds, that in nowise affect the merits of the controversy, especially where it is apparent, as it is here, the utmost good faith has been observed.

The objection that the award was not signed by all the arbitrators at the same time and place, we regard in the same light. It is sufficient that it was signed by them after their work was completed and their deliberations had closed, and that the writing signed fully expresses the conclusions reached by them. Such was the case here. *Blodgett* v. *Prince*, 109 Mass. 46; *Maynard* v. *Frederick*, 7 Cush. 252.

The judgment, however, for the reasons stated, will have to be reversed, and the cause remanded to the Appellate Court, with directions to that court to reverse the decree of the circuit court and remand the cause for further proceedings not inconsistent with this opinion.

*Judgment reversed.*